IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LYDELL SWINSON a/k/a          :            CIVIL ACTION
LINDELL SWINSON, JR.          :
                             :
        v.                    :
                             :
CITY OF PHILADELPHIA, et al.  :            NO. 13-6870

MEMORANDUM

Bartle, J.                                    August 19, 2015

        Before the court is the motion of the defendants for
summary judgment under Rule 56 of the Federal Rules of Civil
Procedure.

        Plaintiff Lydell Swinson, Jr. ("Swinson"), a state
prisoner, brings this action under 42 U.S.C. § 1983 and under state
law against defendants the City of Philadelphia (the "City") and
Michael Curran ("Curran").  Curran is an inspector at the
Philadelphia Department of Licenses & Inspections ("L&I").  This
matter arises out of Curran's inspection and the City's subsequent
demolition on June 24, 2009 of a house owned by Swinson and his
father as tenants in common.  Swinson initiated this action on
April 17, 2013 in the Court of Common Pleas of Philadelphia County.
It was then removed to this court.

        Swinson, who has been incarcerated since 2004, avers
that the City found the house to be dangerously unstable and
demolished it without making any reasonable attempt to notify him

of its intentions beforehand.  He claims that the actions of the City and Curran violated his right to procedural due process under the Fourteenth Amendment to the United States Constitution.  He further asserts that the City took the house without just compensation under the Fifth Amendment and failed to comply with state law governing the demolition of property.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rule 56(c)(1) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or ... showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record

-2-

evidence for a reasonable factfinder to find for the plaintiffs.
Id. at 252.  When ruling on a motion for summary judgment, we may
only rely on admissible evidence.  See, e.g., Blackburn v. United
Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).  We view the
facts and draw all inferences in favor of the nonmoving party.  In
re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II.

The following facts are undisputed or are taken in the
light most favorable to Swinson.  In March 1999, Swinson and his
father, Lindell Swinson, Sr., purchased a house located at 236 East
Mayfield Street in Philadelphia for $20,000.  An indenture and deed
memorialize the purchase.  In the ownership information database
maintained by the Philadelphia Board of Revision of Taxes ("BRT"),
the address of record for both Swinson and his father was his
father's address at 3643 North 13th Street in Philadelphia.

The Pennsylvania General Assembly created the BRT in
1939.  See 72 Pa. Stat. Ann. § 5341.1 et seq.  In 1953 it granted
the Philadelphia City Council the authority to "legislate with
respect to the election, appointment, compensation, organization,
abolition, merger, consolidation, powers, functions and duties of
the ... Board of Revision of Taxes or its successor, with respect
to the making of assessments of real and personal property as

-3-

provided by act of Assembly."[1]   53 Pa. Stat. Ann. § 13132(c).   The parties agree for present purposes that the BRT is an operating department of the City.

After Swinson and his father bought 236 East Mayfield Street, Swinson took up residence there with his wife and three children.   He was arrested in August 2004 and was convicted of various crimes.   He has been in custody since his arrest and has not thereafter visited the Mayfield Street property.   Swinson began his sentence at the State Correctional Institution at Graterford ("SCI Graterford" or "Graterford") and is presently incarcerated at the State Correctional Institution at Mahanoy ("SCI Mahanoy").

According to a declaration submitted by Swinson, while he was imprisoned at Graterford in mid-2008, he exchanged letters with the BRT concerning taxes owed on the Mayfield Street house. He informed the BRT of his location, and the agency sent him letters there.   Despite this correspondence, Swinson's registered address in the BRT's recordkeeping system remained his father's address at 3643 North 13th Street.

---

[1]   On May 18, 2010, nearly one year after the events of this case, the City Council attempted to abolish the BRT and divide its functions between the newly created Philadelphia Office of Property Assessment and Board of Property Assessment Appeals. The Supreme Court of Pennsylvania, however, ruled that the BRT could continue in its appellate or adjudicative function since the City Council did not have the statutory authority to abolish this aspect of the BRT under 53 Pa. Stat. Ann. § 13132. Bd. of Revision of Taxes v. City of Phila., 4 A.3d 610 (Pa. 2010).

On June 1, 2009, defendant Curran inspected the Mayfield Street property.  That same day he used his computer to generate a "violation" notice addressed to Swinson and his father at 3643 North 13th Street.  Curran took no action beyond following the custom of L&I to examine the BRT database to determine Swinson's whereabouts.  The notice prepared by Curran declared the premises to be "IMMINENTLY DANGEROUS."  It further described the specific nature of the hazards and stated that "if you fail to comply with this order forthwith, the City may demolish the structure...."  The addressees were told that if they intended to appeal it must be done "within five days of the date of this notice."

On June 9, 2009 Swinson's father signed a certified mail receipt for the violation notice sent to his address.  Curran thereafter posted a "Danger" sticker on the property.  Swinson's father did nothing to prevent the City from proceeding, and the City razed the Mayfield Street house on June 24, 2009.  Immured at Graterford, Swinson remained ignorant of these fast-moving events.  His father did not inform him of what was happening.

In July 2011 Swinson spoke with his grandmother, Rosemary Jones, about selling the property.  It was at this time that he first learned of the demolition.

### III.

The defendants contend that Swinson's claims are time-barred by virtue of the applicable two-year statute of limitations.

Swinson's complaint, as noted above, was filed on April 17, 2013. According to the defendants, the limitations period began to run on June 24, 2009 when the house was demolished, that is, shortly after his father received on June 9, 2009 the City's notice sent to him and Swinson at 3643 North 13th Street.  The defendants argue that the notice was sufficient to alert Swinson to the City's plans and that in any event he had reason at that time to know what was occurring.  Swinson counters that his father's knowledge cannot be imputed to him and that the clock was tolled until July 2011 when his grandmother told him that the City had torn down the house.

Actions brought under 42 U.S.C. § 1983 are governed by the statute of limitations for personal injuries in the state where the cause of action arose.  Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009).  A personal injury claim in Pennsylvania must be brought within two years after the date that the action accrues. 42 Pa. Cons. Stat. Ann. §§ 5502(a), 5524(2); Lake v. Arnold, 232 F.3d 360, 366 (3d Cir. 2000).  When a § 1983 action accrues is a matter of federal law.  Kach, 589 F.3d at 634.  Accrual occurs when a potential plaintiff "either is aware, or should be aware, of the existence of and source of an injury."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994); see also Kach, 589 F.3d at 634.  This is an objective inquiry which asks what a reasonable person should have known standing in the potential plaintiff's shoes.  Kach, 589 F.3d at 634.

-6-

Moreover, Pennsylvania's discovery rule will toll the running of the statute of limitations until a plaintiff "knew or should have known on the exercise of reasonable diligence of his injury and its cause." Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005); see also Bynum v. Trustees of Univ. of Pa., Civil Action No. 15-1466, --- F. Supp. 3d ---, 2015 WL 4480842, at *5 (E.D. Pa. July 23, 2015).[2]  "[T]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003) (quoting Cochran v. GAF Corp., 666 A.2d 245, 249 (Pa. 1995)); see also Vernau v. Vic's Market, Inc., 896 F.2d 43, 46 (3d Cir. 1990).

It is undisputed that Swinson at all times relevant was a state prisoner incarcerated outside of the City and County of Philadelphia.  It is also undisputed that he did not gain actual knowledge of the June 2009 razing of his home on Mayfield Street until July 2011 when he discussed selling the property with his grandmother.

The defendants first argue that the knowledge Swinson's father obtained from the June 2009 notice is imputed to Swinson.

---

[2]  Federal courts generally apply the state's tolling principles when the state's limitations period controls. Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991).

Under Pennsylvania law Swinson is presumed to hold the property with his father as a tenant in common.  6 Summ. Pa. Jur. 2d Property § 6:5 (2d ed. 2015).  In the Commonwealth "[a] tenancy in common is an estate in real or personal property in which there is a unity of possession but separate and distinct titles."  6 Summ. Pa. Jur. 2d Property § 6:2 (footnote omitted).  As the Supreme Court of Pennsylvania has recognized, "[u]nder ordinary circumstances neither tenant in common can bind the estate or person of the other by any act in relation to the common property, not previously authorized or subsequently ratified, for cotenants do not sustain the relation of principal and agent to each other, nor are they partners."  Caveny v. Curtis, 101 A. 853, 854 (Pa. 1917).

Swinson's father resided at 3643 North 13th Street while Swinson was imprisoned at SCI Graterford.  There is no evidence that his father ever communicated with him about the demolition notice.  The knowledge of one cotenant may not be imputed to another cotenant, at least under the circumstances presented here. The knowledge of Swinson's father cannot be deemed the knowledge of Swinson or attributed to Swinson for purposes of the running of the statute of limitations against Swinson.

Nor can the defendants successfully argue that Swinson through reasonable diligence should have known about the demolition in June 2009.  He certainly had no ability to visit the property

since his arrest in 2004 or to peruse the mail sent to him and his father at 3643 North 13th Street.  There is no evidence in the record that he had reason to know that the property he had last seen in 2004 was in a hazardous condition in June 2009.  Nor is there any way he could have read the mind of his father or that of a city inspector.  Nothing had taken place to "awaken [Swinson's] inquiry."  Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003).

        What Swinson did do was to notify the BRT in 2008 of his incarceration at Graterford.  Yet the City, which had a duty to notify the owner of its demolition plans, never sent him notice at his prison address.  Prisoners, unlike free persons outside the prison walls, have limited opportunity to discover what is occurring with a property they own.  See United States v. One Toshiba Color Television, 213 F.3d 147, 154 (3d Cir. 2000).  A jury could properly find on the facts before us that Swinson acted with reasonable diligence.

        The focus in any tolling of the statute of limitations is on the knowledge or reasonable diligence of the potential plaintiff and not on the knowledge or conduct of other persons. See Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005).  In a malpractice action, for example, the surgeon may know that he left a sponge in a patient's stomach.  It is the knowledge and diligence of the patient in discovering the source of the injury, not the individualized knowledge of the surgeon or anyone else that is

-9-

relevant for tolling purposes.  Likewise, the unshared knowledge of Swinson's father cannot be deemed the knowledge of Swinson or imputed to Swinson.  As noted above, there is evidence that he acted with reasonable diligence when he provided the City with his prison address.  Swinson brought the action within two years after first learning from his grandmother in July 2011 of the demolition of his house.

Evidence of tolling of the statute of limitations exists.  Thus, the defendants are not entitled to summary judgment based on the absence of such evidence.

IV.

The defendants next assert that, even if the statute of limitations were tolled, the action is time-barred because Swinson received adequate notice in June 2009 of the impending demolition as a result of the City's notice to Swinson and his father at 3643 North 13th Street but did not file suit within the required two years after the demolition.  Swinson responds that the notice was insufficient under the Due Process Clause of the Fourteenth Amendment.

As to tolling, as previously noted, the court must review the matter based on the knowledge or reasonable diligence of Swinson, the plaintiff.  In contrast, when considering due process in giving notice of the demolition, we must focus on the conduct of the City and Curran as the parties responsible for giving notice.

-10-

They bear the burden of proof to demonstrate that notice was adequate.  See United States v. One Toshiba Color Television, 213 F.3d 147, 155 (3d Cir. 2000).

The Fourteenth Amendment provides in relevant part:  "No state shall ... deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Trust, 339 U.S. 306, 314 (1950).  Actual notice is not required under this standard.  See, e.g., United States v. One Toshiba Color Television, 213 F.3d 147, 155 (3d Cir. 2000). Instead, the entity providing notice must employ means in the manner of "one desirous of actually informing the absentee." Mullane, 339 U.S. at 315.

Defendants surprisingly rely on the Court of Appeals decision in United States v. One Toshiba Color Television, 213 F.3d 147 (3d Cir. 2000).  There Reginald McGlory had been sentenced to life in prison after being convicted of numerous drug- and firearms-related offenses.  He had been in the custody of the United States from the date of his arrest.

The United States instituted civil forfeiture
proceedings with regard to items of his property including a
television.  Despite his incarceration at a federal prison, the
United States mailed notice of the forfeiture proceedings to
McGlory at an address he used prior to his arrest.  It also sent
notice to his mother and an attorney and published notice in a
newspaper.[3]  After no answer was filed, a default judgment was
entered in the government's favor.  McGlory asserted that he never
received notice of the forfeiture proceedings and sought the return
of his property.

        Our Court of Appeals explained that, while actual notice
is not required, "it is clear that when an incarcerated individual
is the one being served, the serving party must attempt to effect
service where the prisoner may be found -- that is, in prison, not
the pre-incarceration address."  Toshiba, 213 F.3d at 152, 155; see
also Robinson v. Hanrahan, 409 U.S. 38, 40 (1972).  The court
observed that incarcerated persons, unlike free citizens, often
face significant obstacles in maintaining the channels of
communication necessary to learn about events that affect their
affairs outside of prison.  Id. at 154.  Since the United States
made no attempt to serve McGlory in jail with respect to the

---

[3]  It turned out that the attorney had no relationship to McGlory
and did not represent him in any matter.

television, the court found a violation of due process and vacated
the forfeiture order.  Id. at 159.

In Foehl v. United States, 238 F.3d 474 (3d Cir. 2001),
a case involving the civil forfeiture of property owned by a person
free on bail, the court reemphasized that "particularly where the
claimant is in a place chosen by the government, due process may
require that the government make multiple attempts at notification
if the claimant's name and address are reasonably ascertainable."
Id. at 479.  In Foehl the U.S. Drug Enforcement Administration
("DEA") sought to forfeit several items of property belonging to a
person facing drug trafficking charges.  The DEA made no attempt to
verify the person's address despite having access to several
"obvious sources" that called the person's address into question.
Id. at 480.  The Court of Appeals noted the DEA's "glaring lack of
effort ... to ascertain Foehl's correct address" and underlined
that "[t]he constitutional mandate of adequate notice cannot be
treated as empty ritual."  Id.  It held that the DEA violated due
process in failing to make a reasonable effort to provide adequate
notice.  See id.

We need not decide here what duty the City has generally
to determine the prison addresses of inmates who own real estate in

Philadelphia.[4]  In this matter there is evidence that the City was actually aware of Swinson's incarceration at SCI Graterford as a result of his correspondence with the BRT.  Like the United States in Toshiba, the City failed to direct notice to Swinson at SCI Graterford despite having knowledge that he was incarcerated there. Similarly, the City's failure to take basic actions to ensure that notice would be received in light of its knowledge of Swinson's incarceration resembles the DEA's insufficient efforts in Foehl. While the City used the North 13th Street address in the BRT's database, it had previously corresponded with Swinson at his prison address.  On the present record, it knew of Swinson's whereabouts.

The lack of proper notice and opportunity to be heard is particularly egregious when events move as quickly as they did here.  The entire scenario from the inspection of the property on June 1, 2009 until its demolition on June 24, 2009 took less than a month.  It was an even shorter span of time from the point the violation notice was received by Swinson's father on June 9.

The City also relies on Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983), for the proposition that actual notice

_____

[4]  We note that the Pennsylvania Department of Corrections has maintained since at least 2001 a publically-accessible database called the Inmate Locator which may be used to ascertain the current location of all persons held in custody by the Commonwealth or its counties.  Pa. Inmate Locator, http://inmatelocator.cor.state.pa.us/inmatelocatorweb/ (last visited Aug. 18, 2015).

-14-

is not required.  We agree that the City had no obligation under the Fourteenth Amendment to make sure that Swinson received actual notice.  See, e.g., Mennonite Bd., 462 U.S. at 800; Toshiba, 213 F.3d at 155.  However, the City's stance that mailing notice to a person's last known address is all the Constitution requires ignores the crux of the matter.  Again, the BRT had corresponded with Swinson at SCI Graterford.  The record demonstrates that the City knew his last known address was at that prison, not the address to which the City sent notice.  The City then demolished the Mayfield Street house only fifteen days after Swinson's father received the notice at 3643 North 13th Street.  Under the holdings in Toshiba and Foehl, this is certainly sufficient evidence for a reasonable factfinder to conclude that the City has violated Swinson's right to due process by failing to provide him "notice reasonably calculated, under all the circumstances, to apprise [him] ... of the pendency of the action [to demolish his house] and afford [him] an opportunity to present [his] objections." Mullane, 339 U.S. at 314; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

The City has not established as a matter of law that it provided to Swinson adequate notice and opportunity to be heard under the Due Process Clause of the Fourteenth Amendment. Accordingly, its motion for summary judgment that it conformed to this Constitutional requirement will be denied.

-15-

V.

The City further urges that, even if Swinson's action were timely, the City is entitled to summary judgment because Swinson has not linked the failure to notify him of the demolition of the Mayfield Street property to any of its customs, policies, or practices sufficient to impose municipal liability.  See Monell v. Department of Social Services, 436 U.S. 658 (1978).  Swinson has brought his federal claim against the defendants under 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  As the Supreme Court concluded in Monell, 436 U.S. at 690, municipalities are among those "persons" subject to suit via § 1983.

A municipality is liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Id. at 694.  A policy may be said to exist where "a deliberate choice to follow a course of action is made from among various alternatives by the

-16-

official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).  Similarly, a custom or practice is present when "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  A plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Swinson contends that the City has a custom or practice of relying entirely on the BRT's database of registered addresses when sending notices to homeowners.  Defendant Curran, an inspector for L&I for 15 years and who has conducted over 1,000 building inspections, has testified about how he goes about sending such notices.  When Curran discovers code violations during a building inspection, he sends to the property owner a computer-generated notice which uses the database of registered addresses maintained by the BRT.  These notices are sent via registered mail, and the City relies on return receipts for proof that notices have been received.  While the record is not entirely clear, it appears that from time to time Curran finds out that homeowners are incarcerated because "[u]sually they write a letter back to us or something saying they are there [in prison].  After the fact."  Curran does

-17-

not, however, have any personal knowledge of the inner workings of the BRT, nor do his duties as a building inspector include any independent investigation of a property owner's whereabouts.

Taking this evidence in the light most favorable to Swinson, he has failed to show any unconstitutional custom, policy, or practice of the City of Philadelphia which is relevant to the circumstances of this case.  At most he has shown negligence in this one instance involving Swinson's address.  Negligence is insufficient to demonstrate a violation of due process.  See Daniels v. Williams, 474 U.S. 327, 328 (1986).  Moreover, evidence of a single occurrence is generally not sufficient for Monell purposes unless that occurrence is the result of a policy that is unconstitutional on its face.  See City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985).  While the BRT apparently failed to update Swinson's registered address after learning that he was in prison, Swinson has not adduced any evidence of other times that the BRT has received word that a person is in prison but neglected to change its records accordingly.  Without additional proof that this is a commonplace shortcoming, the City cannot be held liable.

Swinson misses the mark when he argues that the City has an unconstitutional practice of failing to ascertain whether a person is incarcerated before sending demolition notices.  Even if this is so, it is irrelevant to the circumstances of

-18-

this case where the City already knew of Swinson's prison address.  We have no concern with possible unconstitutional customs, policies, or practices when they do not implicate the wrong alleged here.  As the Supreme Court has explained, a causal link is necessary between the custom, policy, or practice and the constitutional deprivation.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).  Swinson's claims against the City are not cognizable under § 1983.

On the subject of any individual liability of Curran, we hasten to add that there is no evidence to suggest that he is individually responsible for any due process violation.  Taking the evidence in the light most favorable to Swinson as we must at this stage, and as noted above, the City knew that Swinson was in prison before Curran sent the violation notice.  It therefore had reason to know that the registered address in its database was out of date.  But it was the City's duty and not Curran's to maintain the database of registered addresses.  Curran committed no constitutional violation in using Swinson's registered address to generate the notice of violation when he had no indication that it was inaccurate.  See <u>Jones v. Flowers</u>, 547 U.S. 220, 229 (2006).

Accordingly, summary judgment will be granted in favor of the City of Philadelphia and Curran as to Swinson's § 1983 claims.[5]

VII.

Finally, we still have before us Swinson's claim that the City is liable for the demolition of his home under state law on the ground of negligent demolition.  He argues that the City's notice to him was deficient, citing the decision of the Pennsylvania Supreme Court in Pivirotto v. City of Pittsburgh, 528 A.2d 125 (Pa. 1987).  See also 53 Pa. Stat. Ann. §§ 14611, 14612. Our analyses of the tolling of the statute of limitations and the deprivation of adequate notice under the Due Process Clause with respect to Swinson's federal claims are equally applicable to his state law claim.  There is evidence that his action is timely.  In addition, the City has not provided any substantive or other argument why Swinson's state-law claim should not proceed to

---

[5]  In light of this conclusion we need not address the City's arguments regarding Swinson's takings claim under the Fifth Amendment.  We note that such a claim is properly brought against a state under the Fourteenth Amendment rather than the Fifth Amendment.  In any event, Swinson's takings claim is without merit since the demolition of a dangerous building involves the exercise of the City's police power and not its eminent domain power.  See Nat'l Amusements Inc. v. Borough of Palmyra, 716 F.3d 57, 63 (3d Cir. 2013); Duffy v. Kent Cnty. Levy Court, 591 F. App'x 41, 44 (3d Cir. 2014).

trial.[6]  Summary judgment will therefore be denied on Swinson's claim for negligent demolition under Pennsylvania law.

                              VIII.

        In sum, summary judgment will be granted in favor of the City of Philadelphia and Curran and against Swinson with respect to Swinson's claims under 42 U.S.C. § 1983.  The motion of the City for summary judgment on plaintiff's state law claim will be denied.

---

[6]  At oral argument the City raised the defense of governmental immunity, but it did not do so in its brief.  See 42 Pa. Cons. Stat. Ann. §§ 8541, 8542.  The City has yet to file an answer to Swinson's amended complaint.  Without the benefit of briefing or a responsive pleading, any consideration of this defense is premature.