IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


LYDELL SWINSON a/k/a          :          CIVIL ACTION
LINDELL SWINSON, JR.          :
                              :
      v.                      :
                              :
CITY OF PHILADELPHIA, et al.  :          NO. 13-6870


<u>MEMORANDUM</u>

Bartle, J.                                    December 3, 2015

        Plaintiff Lydell Swinson, Jr. ("Swinson") has sued the

defendants City of Philadelphia ("City") and City Inspector

Michael Curran under 42 U.S.C. § 1983 and under Pennsylvania law

as a result of the City's failure to provide him notice of the

demolition of his home.  Swinson, acting pro se, initiated this

action in the Court of Common Pleas of Philadelphia County.  The

defendants timely removed the action to this court and answered

the complaint.  After counsel was appointed for Swinson, an

amended complaint was filed.  The defendants have not filed an

answer to this pleading but instead moved for summary judgment.

The court thereafter granted summary judgment in favor of the

defendants on Swinson's § 1983 claims but denied the motion as

to his state law claim.  <u>See</u> <u>Swinson v. City of Philadelphia</u>,

2015 WL 4975077, at *7-8 (E.D. Pa. Aug. 19, 2015).

Before the court is the motion of the defendant City[1] to dismiss Swinson's remaining state law claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

I.

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

---

1.  Although City Inspector Michael Curran also has moved to dismiss the state law negligent demolition claim, the amended complaint alleges negligent demolition against the City only. His motion will be denied as moot.

On a motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

II.

The following facts are undisputed or viewed in the light most favorable to Swinson, the nonmoving party.  In March 1999, Swinson and his father, Lindell Swinson Sr., purchased a house located at 236 East Mayfield Street in Philadelphia. Swinson lived at the property with his wife and three children from March 1999 until August 2004.

Since that time, Swinson has been incarcerated. During 2008 and 2009, he was confined at the Pennsylvania State Correctional Institution at Graterford ("Graterford").  In 2008, he informed the City's Board of Revision of Taxes ("BRT") that he was located there.  Swinson and the BRT then exchanged letters regarding taxes owed for the Mayfield Street property.

In June 2009, while Swinson was at Graterford and unbeknownst to him, City Inspector Michael Curran determined that the house Swinson and his father owned was "imminently dangerous."  On June 1, 2009, the City sent a single "violation notice" to Swinson and his father at an address different from

-3-

that of the Mayfield Street property.   The notice stated that
the City "Department of Licenses and Inspections has inspected
the subject premises and declared it IMMINENTLY DANGEROUS."   It
also contained an instruction to comply or appeal "within 5 days
of the date of this notice."   It warned that "[i]f you fail to
comply with this order forthwith, the City may demolish the
structure" and "[y]ou, the owner, will be billed for all costs
incurred."   The City also posted a "Danger" sign on the
property.

Swinson's father received the notice and signed a
certified mail receipt on June 9, 2009.[2]   Swinson, however, did
not reside at the address where his father was living as he was
incarcerated at Graterford.   The City never sent Swinson a
notice at that location.   On June 24, 2009, the City demolished
the house.   It was not until July 2011 that Swinson first
learned that his home had been razed when he asked his
grandmother for assistance in selling the property.

The remaining state law claim, set forth as Count IV
in his counseled-amended complaint, is styled as a claim for
"common law negligent demolition."   It alleges that the City
violated Swinson's "legally protected interest in the Property,

---

2.  The fact concerning the violation notice sent to and
received by Swinson's father is contained in Swinson's original
pro se complaint.   The City attached a copy of the signed return
receipt to its papers in support of its earlier motion for
summary judgment.

-4-

which entitled him to actual notice from the City of
condemnation and demolition."  Swinson pleads that "[w]here a
City condemns and demolishes a property without providing actual
notice to the owner, the city is liable for negligent
demolition."

III.

The City argues that it is immune, under the Political
Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat.
§§ 8541 et seq., from liability for plaintiff's state law claim.
The PSTCA, which originally became effective in 1979, grants the
City broad immunity:

> [e]xcept as otherwise provided in this
> subchapter, no local agency shall be liable
> for any damages on account of any injury to
> a person or property caused by any act of
> the local agency or an employee thereof or
> any other person.

Id. § 8541.  The PSTCA contains exceptions to immunity if:
(1) the plaintiff seeks damages otherwise recoverable under
common law or a statute against a party not benefiting from
immunity, (2) the alleged injury was caused by a negligent act
of the City or its employees acting within the scope of the
employees' office or duties, and (3) the negligent act falls
into one of eight enumerated exceptions.[3]  See id. § 8542.

---

3.   The eight exceptions "permit[ ] the imposition of liability
for negligence relating to: (1) the operation of a motor vehicle
in the possession or control of a local agency; (2) the care,

Under the real property exception, the only exception that could plausibly apply here, the City is liable for its negligent acts concerning "[t]he care, custody or control of real property in the possession of the local agency." See id. § 8542(b).  Pennsylvania courts have:

> consistently held that the real estate exception imposes a standard of liability on the political subdivision to an extent no greater than that of a private landowner, and that this duty is to maintain the property safely for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be forseen [sic] to be used.

Mascaro v. Youth Study Ctr., 523 A.2d 1118, 1123 (Pa. 1987).

The Pennsylvania Supreme Court has explained that "the real estate exception to governmental immunity is a narrow exception."  Id. at 1123-24.  The real property exception only applies where the City possesses the property, and "possession requires total control over the property by the local agency." City of Pittsburgh v. Estate of Stahlman, 677 A.2d 384, 387 (Pa. Commw. Ct. 1996).  Possession does not exist "merely because the

---

custody or control of personal property in the possession or control of a local agency; (3) the care, custody or control of real property; (4) a dangerous condition created by trees, traffic controls, or street lights; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; (8) the care, custody or control of animals in the possession or control of a local agency."  See Wiggs v. City of Philadelphia, 2014 WL 772538, at *6 (E.D. Pa. Feb. 27, 2014); 42 Pa. Cons. Stat. § 8542(b).

local agency has the power and authority to inspect private property." Garrifo Real Estate Holdings Co. v. City of Philadelphia, 2007 WL 1410607, at *6 (E.D. Pa. May 11, 2007); City of Pittsburgh, 677 A.2d at 387.  In addition, "mere occupation of the premises for a limited period is insufficient to impose liability." City of Pittsburgh, 677 A.2d at 387; Gramlich v. Lower Southhampton Twp., 838 A.2d 843, 848 (Pa. Commw. Ct. 2003).  Rather, "the local agency must have total control over the premises for more than a limited period of time." Alvarez v. City of Philadelphia, 2003 WL 22595204, at *3 (E.D. Pa. Oct. 29, 2003).

Taking as true the facts alleged in the amended complaint, the real property exception does not help Swinson. While the City of course exercised control over his house during its demolition, it was by "mere occupation of the premises for a limited period" and, as such, "is insufficient to impose liability." City of Pittsburgh, 677 A.2d at 387.  Further, the City's alleged act of demolition without notice is not the type of activity for which the real property exception creates liability.  In failing to supply notice to Swinson in advance of demolition, the City has not committed a negligent act related to a duty "to maintain the property safely for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be forseen [sic] to be

-7-

used." See Mascaro, 523 A.2d at 1123.   Count IV of the amended

complaint does not fall within the real property exception or

for that matter under any other exception from the broad

immunity from suit granted to municipalities under the PSTCA.

IV.

In support of his state law claim, Swinson relies, not

on the PSTCA, but on a notice statute applicable to Philadelphia

and enacted by the Pennsylvania General Assembly in 1961:

> [w]henever in any city of the first class
> [Philadelphia][4] any building or premises is
> being maintained in a condition which is
> found to be hazardous, structurally unsound,
> dangerous or unfit for human habitation and
> in violation of any law or ordinance, such
> building or premises may be declared to be a
> nuisance by the Department of Licenses and
> Inspections, and a notice of such finding
> and declaration shall be served upon the
> registered owner of the building or premises
> directing the abatement of the nuisance.
> The notice shall reasonably specify such
> repairs or such other measures, including
> demolition, as may be necessary to abate the
> nuisance and shall require their completion
> within a reasonable time not less than
> thirty days from the date of service of the
> notice.

53 Pa. Cons. Stat. § 14611 (emphasis added).   Section 14612

further provides:  "[i]f the owner does not have a residence

. . . where he may be served within [Philadelphia], the notice

shall be sent by registered or certified mail to the last known

---

4. Philadelphia is the only city of the first class in the
Commonwealth of Pennsylvania.  See 53 Pa. Cons. Stat. § 101.

address of such owner." See id. § 14612.  The State

Correctional Institution at Graterford, where Swinson was

confined at all relevant times, is located in Montgomery County.

In considering § 14611, we look to Pivirotto v. City

of Pittsburgh, 528 A.2d 125 (Pa. 1987).  In Pivirotto, an

individual had purchased a building in the City of Pittsburgh at

a tax sale.  The law provided a one year period for the

delinquent owner to redeem the property.  During the redemption

period, the City of Pittsburgh notified the delinquent owner but

not the purchaser that the building was to be razed.  The City

then demolished the building, and the purchaser brought an

action against the City under a statute covering cities of the

second class[5] and requiring the mailing of a notice to the owner

that demolition was to take place.[6]

---

5.  Pittsburgh is the only city of second class in the
Commonwealth.  See 53 Pa. Cons. Stat. § 101.

6.  The statute at issue in Pivirotto was 53 Pa. Cons. Stat.
§ 25094, which stated:

> [a]ll orders herein provided or issued by
> the Department of Public Safety, and
> directed to the owner, shall be served by
> pasting a copy or copies in a conspicuous
> place on the building referred to in such
> order, and by prepaid mailing of a copy
> thereof, on the same day, to the owner or
> owners whose address is known or ascertained
> by the said department.  If, after a
> reasonably diligent search, the address or
> addresses of the owner or owners cannot be
> ascertained, said orders shall, in addition

While the purchaser in Pivirotto, like Swinson here, characterized his claim as one for "negligent demolition," the Pennsylvania Supreme Court framed "[t]he question presented" to be "whether the city followed procedures adequate to afford all those having an interest in the property an opportunity to protect that interest." See id. at 127.  The Court held that Pittsburgh must provide all having an ownership interest with actual notice that a building will be demolished if the identity and whereabouts of those with an ownership interest are "readily accessible." See id. at 129.  Failure to do so gives rise to a claim for damages.  As in Pivirotto, the demolition of a home in Philadelphia without service of notice on the homeowner whose identity and whereabouts are "readily accessible" violates § 14611 applicable to this City and allows for the recovery of damages.

V.

We are faced with a Pennsylvania statute, § 14611, requiring the City to serve notice on a homeowner before the demolition of the homeowner's property takes place and the

---

to posting, be served upon the agent, or the tenant or tenants, or other responsible occupant of said building, if any.  All orders directed to the occupant shall be served in the manner above provided, and, in addition thereto, by handing a copy thereof to the occupant of the premises.

53 Pa. Cons. Stat. § 25094; Pivirotto, 528 A.2d at 127.

subsequent PSTCA which cloaks a political subdivision such as the City with broad immunity from suit.  If the PSTCA supersedes § 14611, Swinson will be without a state remedy.

The PSTCA and § 14611 appear to be in pari materia, because, in the words of the Statutory Construction Act, the two statutes "relate to the same persons or things or to the same class of persons or things."  See 1 Pa. Cons. Stat. § 1932(a). The Statutory Construction Act requires that "[s]tatutes in pari materia shall be construed together, if possible, as one statute."  Id. § 1932(b).  The Pennsylvania Supreme Court has further cautioned that "conflicts between various statutes must be avoided when possible."  See Hous. Auth. v. Pa. Civil Serv. Comm'n, 730 A.2d 935, 946 (Pa. 1999).

Keeping these principles in mind, we do not read the PSTCA as having eliminated a cause of action against the City when an existing state statute with constitutional ramifications requires it to serve homeowners with a notice of demolition of their property.  The Statutory Construction Act declares that "the General Assembly does not intend a result that is . . . unreasonable" and "does not intend to violate the Constitution of the United States or of this Commonwealth."  See 1 Pa. Cons. Stat. § 1922.  The Pennsylvania Constitution provides that:

> [a]ll men are born equally free and
> independent, and have certain inherent and
> indefeasible rights, among which are those

-11-

> of enjoying and defending life and liberty,
> of acquiring, possessing and protecting
> property and reputation, and of pursuing
> their own happiness.

Pa. Const. art. 1, § 1.  Under this provision, "an individual's right to property and reputation may not be deprived without due process."  See Palmer v. Bartosh, 959 A.2d 508, 514 (Pa. Commw. Ct. 2008).  "This section has been interpreted as affording property owners' rights comparable to the due process and equal protection rights under the 14th Amendment of the Federal Constitution."  Herrit v. Code Mgmt. Appeal Bd., 704 A.2d 186, 188 n.6 (Pa. Commw. Ct. 1997).  At oral argument, the City conceded that a due process claim is an appropriate vehicle for pursuing relief where the plaintiff alleges a failure of notice.

The Pennsylvania Supreme Court in Pivirotto recognized the constitutional dimension of a notice statute in requiring the City of Pittsburgh pay damages for failure to give notice of demolition to a building owner.  See Pivirotto, 528 A.2d at 127, 129.  The Court noted that "[t]o divest ownership, without personal notice, and without direct compensation, is the instance in which a constitutional government approaches most near to an unrestrained tyranny."  See id. at 129 (quoting Gault's Appeal, 33 Pa. 94, 97-98 (1859)).  The same analysis applies to § 14611 which requires the City of Philadelphia to

serve the owner with notice in advance of demolishing a property.

It is simply unreasonable to infer that the General Assembly in enacting the PSTCA intended to vitiate § 14611 requiring due process and to erase any state law remedy for a homeowner when the City razes his or her home without notice. Section 14611 and the PSTCA can be construed together and any conflict between the two can be avoided. See 1 Pa. Cons. Stat. § 1932; Hous. Auth., 730 A.2d at 946. Section 14611, in our view, remains in full force and effect. See Gans v. City of Philadelphia, 403 A.2d 168, 169 n.2 (Pa. Commw. Ct. 1979); Bullard v. City of Philadelphia, 847 F. Supp. 2d 711, 713 n.2 (E.D. Pa. 2012).

The City, according to Swinson's pleading, knew that the Mayfield Street property was owned by two individuals, Swinson and his father, and knew their current addresses. Yet, the City gave notice of the demolition to only one, that is Swinson's father. Section 14611 requires that "notice . . . shall be served upon the registered owner of the building," not simply on one of the owners. See 53 Pa. Cons. Stat. § 14611 (emphasis added). As the Pennsylvania Supreme Court emphasized in Pivirotto, "all those having an interest in the property" are to receive notice if their identity and whereabouts are "readily accessible." See Pivirotto, 528 A.2d at 127, 129. Moreover,

-13-

the Statutory Construction Act states that "[t]he singular shall include the plural, and the plural, the singular." 1 Pa. Cons. Stat. § 1902. If, as pleaded, Swinson, as one of the owners of the Mayfield Street house, was not served with notice of its impending demolition and the City's BRT knew he was incarcerated at Graterford, the City has violated § 14611 and is liable to him for damages.

Accordingly, Swinson has a viable claim for damages against the City under § 14611. The motion of the City to dismiss Count IV of the amended complaint will be denied.