IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LYDELL SWINSON a/k/a              :          CIVIL ACTION
LINDELL SWINSON, JR.              :
                                  :
          v.                      :
                                  :
CITY OF PHILADELPHIA, et al.      :          NO. 13-6870

MEMORANDUM

Bartle, J.                                   April 7, 2016

This action involves the demolition by the defendant City of Philadelphia ("City") of a house plaintiff Lindell Swinson, Jr. ("Swinson") co-owned with his father.  Before the court are the motion of Swinson for summary judgment on liability and the motion of the City for summary judgment.

Swinson, acting pro se, filed this lawsuit.  The court subsequently appointed him counsel.  His amended complaint contained claims under 42 U.S.C. § 1983 against the City and City Inspector Michael Curran as well as a claim against the City alone under Pennsylvania law for negligent demolition.

The court previously granted the motion of the City and Inspector Curran for summary judgment on Swinson's claims under § 1983.  See Swinson v. City of Philadelphia, 2015 WL 4975077, at *7 (E.D. Pa. Aug. 19, 2015).  The court also denied the City's motion to dismiss Swinson's state law claim.  See Swinson v. City of Philadelphia, 2015 WL 7887855, at *5

(E.D. Pa. Dec. 3, 2015).  The pending summary judgment motions concern Swinson's state law claim.

I.

The following facts are not in dispute.  In March 1999, Swinson and his father, Lindell Swinson, Sr., purchased a house located at 236 East Mayfield Street in Philadelphia.  The deed contained the following language, handwritten in part: "[t]he address of the above Grantee is 3643 N. 13th St., Phila. PA 19140."  The deed did not say which "Grantee" was being referenced.  Swinson lived at the Mayfield Street address with his wife and three children until August 2004, when he was arrested.

Swinson was subsequently convicted of several crimes and sentenced to life in prison in February 2006.  He was confined at the Pennsylvania State Correctional Institution at Graterford ("Graterford") in Montgomery County between 2008 and 2013.

In late 2008, Swinson mailed a handwritten letter from Graterford to the City's Department of Revenue concerning the Mayfield Street property.[1]  The City received the letter on

---

1.  During the discovery period and in its pretrial memorandum, the City stated that it had no correspondence with Swinson about the Mayfield Street property while he was incarcerated at Graterford.  However, two days before trial was scheduled to begin, the City produced records demonstrating that it had in

January 9, 2009.  In the letter, Swinson informed the City that he was incarcerated and requested a payment plan for back real estate taxes that were owed on the property.

Swinson sent another letter from Graterford to the City's Department of Revenue in February 2009.  The City received it on March 13, 2009.  Swinson apprised the City that he was "doing a life sentence" and again requested a payment plan to resolve the back taxes.  He also asked for a copy of the property deed.  Swinson wrote his return address at Graterford on the envelope.

On March 31, 2009, the City's Department of Revenue mailed a letter to Swinson's Graterford address in response to Swinson's first letter.[2]  The City told him that a private collection agency had assumed responsibility for collecting back taxes owed on his property.  In its computer system, it noted that it "REC'D CORRES FROM T/P WHO IS INCARCERATED" and sent him a letter in response.[3]  Then, on April 22, 2009, the City

---

fact corresponded with Swinson at Graterford concerning the property at a time before the demolition.

2.  The envelope from Swinson's first letter is not in the record.

3.  Presumably, "T/P" means taxpayer.

indicated in its computer system:  "REFER TO NOTE 3/31/09 T/P IS
MAKING THE SAME REQUEST FOR AN AGREEMENT WHILE INCARCERATED."[4]

On May 27, 2009, the City's Department of Revenue sent
a second letter to Swinson at his Graterford address.  This was
in reply to his February 2009 letter and enclosed a copy of the
deed for the Mayfield Street property.  The City again made note
of its communication with Swinson in its computer system.

Just five days later, on June 1, 2009, the City's
Department of Licenses and Inspections ("L&I") sent a single
"violation notice" concerning 236 East Mayfield Street to
Swinson and his father at 3643 North 13th Street.  L&I had
obtained this address not from its own departmental records but
from the City's Board of Revision of Taxes ("BRT"), an agency
which at that time had responsibility for real estate
assessments in Philadelphia.[5]  The violation notice stated that
the City "Department of Licenses and Inspections has inspected
the subject premises [at 236 East Mayfield Street] and declared
it IMMINENTLY DANGEROUS."  It specified the ways in which the
property was in violation of the Philadelphia Property
Maintenance Code.  It instructed Swinson and his father either

---

4.  The communication corresponding with this entry is not in
the record.

5.  The Office of Property Assessment is now responsible for
property assessments.  The BRT presently serves as an appeals
board.  See Bd. of Revision of Taxes v. City of Philadelphia,
4 A.3d 610, 615, 628 (Pa. 2010).

to comply with the notice by repairing the structure or to appeal "within 5 days of the date of this notice."  It warned that "[i]f you fail to comply with this order forthwith, the City may demolish the structure" and "[y]ou, the owner, will be billed for all costs incurred."

Swinson's father received the notice at 3643 North 13th Street and signed a certified mail receipt for it. Swinson, however, did not receive word about the letter because he was incarcerated at Graterford.  Although the City had five days earlier sent mail concerning the Mayfield Street property to Swinson at his Graterford address, it did not send a violation notice to Swinson at that location.

The City demolished the house on June 24, 2009.  It was not until July 2011 that Swinson first learned that his home had been razed when he asked his grandmother for assistance in selling the property.

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See id. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.

When ruling on a motion for summary judgment, we may only rely on admissible evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 94-95 (3d Cir. 1999).  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

As noted above, both sides have moved for summary judgment.  When confronted with cross-motions for summary judgment, our task remains the same, as such motions:

> are no more than a claim by each side that
> it alone is entitled to summary judgment,
> and the making of such inherently
> contradictory claims does not constitute an
> agreement that if one is rejected the other
> is necessarily justified or that the losing
> party waives judicial consideration and
> determination whether genuine issues of
> material fact exist.

-6-

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d
555, 560 (3d Cir. 2001) (quoting Rains v. Cascade Indus., Inc.,
402 F.2d 241, 245 (3d Cir. 1968)).

                              III.

          The Pennsylvania Supreme Court has held that where a
property owner's identity and whereabouts are "readily
accessible" to a municipality, the property owner has a claim
for damages against the municipality if it fails to provide
notice of an impending demolition.  See Pivirotto v. City of
Pittsburgh, 528 A.2d 125, 129 (Pa. 1987); Swinson v. City of
Philadelphia, 2015 WL 7887855, at *5 (E.D. Pa. Dec. 3, 2015).
In Pivirotto, an individual had purchased a building in the City
of Pittsburgh at a tax sale.  The law provided a one-year period
for the delinquent prior owner to redeem the property.  During
the redemption period, the City of Pittsburgh notified the
delinquent prior owner but not the purchaser that the building
was to be razed.  It then demolished the building, and the
purchaser brought an action against the City of Pittsburgh for
negligent demolition.  Because the City had the purchaser's name
and address readily available in its property tax records, the
Court upheld a verdict against the City for negligent
demolition.

          The Pennsylvania Supreme Court considered whether,
preceding demolition, "the city followed procedures adequate to

                              -7-

afford all those having an interest in the property an
opportunity to protect that interest." See Pivirotto, 528 A.2d
at 127.  The Court cited a Pennsylvania statute requiring the
City of Pittsburgh to provide the property owner with advance
notice of demolition.  See id. (citing 53 P.S. § 25094).  The
Court then spoke more broadly about the need for proper notice
before the government tears down a building.  It explained that
where the government fails to take the reasonable step of
consulting a department likely to be knowledgeable about the
identity and whereabouts of the property owners before
destroying their property, the government is liable for
negligent demolition.  See id. at 129.  The Court further stated
that the municipality should have checked the tax records for
the property owner's name and address when sending a notice of
demolition because properties with housing code violations are
likely to be subject to tax delinquencies and sales for unpaid
taxes.  See id.

        Although there were no state or federal constitutional
claims in Pivirotto, the Court was concerned with the
constitutional implications of failing to provide notice.  It
described demolition as "a severe exercise of power."  See id.
It strongly cautioned governments in Pennsylvania against
abusing this power:  "To divest ownership, without personal
notice, and without direct compensation, is the instance in

which a constitutional government approaches most near to an
unrestrained tyranny." Id. (quoting Gault's Appeal, 33 Pa. 94,
97-98 (1859)). The Court applied the "safeguards" provided to
property owners facing a tax sale to property owners facing
condemnation and demolition as set forth in Tracy v. County of
Chester Tax Claim Bureau, 489 A.2d 1334 (Pa. 1985). See
Pivirotto, 528 A.2d at 129; see also In re Tax Claim Bureau, 600
A.2d 650, 654 n.4 (Pa. Commw. Ct. 1991).

        In Tracy, the Pennsylvania Supreme Court overturned a
tax sale when the Chester County Tax Claim Bureau failed to give
notice to the property owners. See Tracy, 489 A.2d at 1338-39.
While the government is not required to use "extraordinary
efforts," it must "expend reasonable efforts to ascertain the
identity of the purchaser of the [demolished] property" even if
this requires it to go beyond applicable statutory law. See
Pivirotto, 528 A.2d at 129 (citing Tracy, 489 A.2d at 1338).
The Chester County Tax Claim Bureau had sent two tax delinquency
notices to the address of the partnership listed in the Tax
Claim Bureau's records. Although the partner who had resided at
that address had withdrawn from the partnership and moved to a
new location, the first notice was forwarded to his new address.
He informed the remaining members of the partnership about the
notice but they believed that the notice had been sent in error
and took no action. The second notice was not forwarded but was

-9-

instead returned to the Tax Claim Bureau as undelivered.  The
Tax Claim Bureau then sold the property owned by the partnership
at a tax sale.

        The Pennsylvania Supreme Court held that even if the
"Tax Claim Bureau complied with all of the requirements of" the
applicable Pennsylvania statute on notice, "[r]easonable efforts
to effect actual notice were not carried out in this case, and
the tax sale of this property must be set aside."  See Tracy,
489 A.2d at 1337, 1339.  "[C]onstitutional due process
principles require a tax claim bureau in certain circumstances
to make additional efforts to determine the correct names and
addresses of property owners even though the notices given
complied with the [statutory] . . . requirements."  See Husak v.
Fayette Cty. Tax Claim Bureau, 61 A.3d 302, 306 (Pa. Commw. Ct.
2013) (citing Geier v. Tax Claim Bureau, 588 A.2d 480, 483 (Pa.
1991); Tracy, 489 A.2d at 1338).

        The Tracy Court stated that "where the mailed notice
has not been delivered because of an inaccurate address, the
authority must make a reasonable effort to ascertain the
identity and whereabouts of the owner(s)."[6]  See Tracy, 489 A.2d

---

6.  The U.S. Supreme Court in Jones v. Flowers, 547 U.S. 220
(2006), explained that the Pennsylvania Supreme Court "decided
that when the government learns its attempt at notice has
failed, due process requires the government to do something more
before real property may be sold in a tax sale."  See id. at 227
(citing Tracy, 489 A.2d at 1338-39).

at 1338-39 (emphasis omitted).  In this case, "a reasonable
effort would have been to make inquiry of the records maintained
by the office of the Secretary of the Commonwealth in Harrisburg
to determine the identity and addresses of the partners."  See
id. at 1339.

      The Court more recently declared that "[r]equiring the
tax bureau in Tracy to check the records of sister government
agencies before permitting the forfeiture of real property did
not constitute 'extraordinary efforts.'"  See Sklar v.
Harleysville Ins. Co., 587 A.2d 1386, 1388 (Pa. 1991) (citing
Tracy, 489 A.2d at 1339).  Pennsylvania "courts have
consistently held that the 'reasonable effort' requirement of
Tracy must be met."  See In re Tax Claim Bureau, 600 A.2d at
654.

      Likewise, in addressing a tax sale, the Commonwealth
Court held in In re Tax Claim Bureau that a County Tax Claim
Bureau had to go beyond the official registered address in its
database in providing notice to the property owner after its
notice was returned as undelivered.  It explained that "due
process requires the tax claim bureau to do more than merely
check telephone directories and the records maintained by the
offices of the recorder of deeds and prothonotary and the county
assessment office."  See id.  Rather, "[i]n the course of making
additional inquiries after the certified mailing was returned,

-11-

the Bureau should have found [the property owner's] address in the Domestic Relations records when it was checking the dockets and indices in the prothonotary's office." <u>Id.</u>  Furthermore, "the Bureau had copies of [the owner's] 1988 and 1989 petitions for special relief <u>in its own file on the subject property</u> by virtue of the trial court orders staying the tax sale of [her] property." <u>Id.</u>  It was thus inappropriate for the Bureau to continue to use the address it had on file because the owner's updated address was readily accessible.  We see no reason why this analysis should not also apply to a claim for negligent demolition.  <u>See</u> <u>Pivirotto</u>, 528 A.2d at 129.

IV.

Swinson argues that the City is liable as a matter of law for the negligent demolition of his house on Mayfield Street based on the undisputed facts that the City failed to provide him with prior notice of that demolition when it knew that he was incarcerated at Graterford.

The City counters that Swinson's action for negligent demolition fails as a matter of law because the Pennsylvania Constitution and 53 P.S. § 14611,[7] the state statute requiring

---

7.  This statute provides:

> [w]henever in any city of the first class
> [Philadelphia] any building or premises is
> being maintained in a condition which is
> found to be hazardous, structurally unsound,

-12-

the City to provide notice of demolition, do not allow for damages.  The City again argues, as it had in its earlier motion to dismiss, that it is immune from Swinson's claim under the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. §§ 8541 et seq.  See Swinson, 2015 WL 7887855, at *2.  To the extent it was obligated to provide Swinson with notice, the City maintains that it has satisfied any notice requirements. It asserts that it was lawful for L&I, the department responsible for condemnation and demolition, to consult only the BRT for Swinson's contact information.  We first turn to the arguments of the City.

---

       dangerous or unfit for human habitation and
in violation of any law or ordinance, such
building or premises may be declared to be a
nuisance by the Department of Licenses and
Inspections, and a notice of such finding
and declaration shall be served upon the
registered owner of the building or premises
directing the abatement of the nuisance.
The notice shall reasonably specify such
repairs or such other measures, including
demolition, as may be necessary to abate the
nuisance and shall require their completion
within a reasonable time not less than
thirty days from the date of service of the
notice.

53 P.S. § 14611.  Philadelphia is the only city of the first
class in the Commonwealth of Pennsylvania.  See 53 P.S. § 101.

Section 14612 further provides:  "[i]f the owner does not have a
residence . . . where he may be served within [Philadelphia],
the notice shall be sent by registered or certified mail to the
last known address of such owner."  53 P.S. § 14612.

In his summary judgment briefs, Swinson has limited his negligent demolition claim to one arising under the common law.  Thus, even if the City is correct that no damages are available under the Pennsylvania Constitution, Swinson has made no state constitutional claim.

While Swinson clearly brings a claim for damages under the common law, that common law claim is integrally related to the notice statute, § 14611.  Under § 14611, when the City determines that:

> any building or premises is being maintained
> in a condition which is found to be
> hazardous, structurally unsound, dangerous
> or unfit for human habitation and in
> violation of any law or ordinance . . . a
> notice of such finding and declaration shall
> be served upon the registered owner of the
> building or premises directing the abatement
> of the nuisance.

§ 14611.  The notice must "reasonably specify such repairs or other measures, including demolition, as may be necessary to abate the nuisance."  Id.  The City must require the completion of those repairs or other measures "within a reasonable time not less than thirty days from the date of service of the notice."  See id.  Section 14612 further provides:  "[i]f the owner does not have a residence . . . where he may be served within [Philadelphia], the notice shall be sent by registered or certified mail to the last known address of such owner."  See § 14612.  It is undisputed that Graterford, where Swinson was

-14-

imprisoned, is in Montgomery County.  Furthermore, it is
undisputed that the demolition occurred less than thirty days
after the date of the violation notice.

        Pivirotto upheld an award of damages pursuant to a
common law cause of action for negligent demolition where notice
was not provided under a state statute, similar to § 14611,
applicable to the City of Pittsburgh.  See Pivirotto, 528 A.2d
at 127, 129.  Swinson's claim for relief is indistinguishable
from that case.

        The City, as noted above, again argues that it is
immune from the present lawsuit under the PSTCA, a statute
originally taking effect in January 1979.  We acknowledge that
the PSTCA broadly immunizes municipalities from tort liability
for damages with certain enumerated exceptions.  See 42 Pa.
Cons. Stat. §§ 8541, 8542.  Nonetheless, we rejected the City's
position in our December 3, 2015 Memorandum and Order that it
was immune from liability under the present circumstances.  See
Swinson, 2015 WL 7887855, at *5-6.  Applying principles of
statutory interpretation, we held that § 14611 is in pari
materia with the PSTCA.  In our analysis, we emphasized the
constitutional dimension of § 14611 and the related cause of
action for negligent demolition.  See, e.g., Pivirotto, 528 A.2d
at 129; In re Tax Claim Bureau, 600 A.2d at 653.  We explained
that "we do not read the PSTCA as having eliminated a cause of

                              -15-

action against the City when an existing state statute with constitutional ramifications requires it to serve homeowners with a notice of demolition of their property." Swinson, 2015 WL 7887855, at *5.  We concluded that, in spite of the immunity granted under the PSTCA, Swinson's claim against the City for negligent demolition remained viable where it was alleged that the City did not provide him with proper notice.  See id.

If we accepted the City's argument that it has immunity here, the City could demolish a person's home without any notice whatsoever, and there would be no remedy against it for damages.  Nor, of course, could there be an equitable remedy if a house is destroyed by the City without notice.  In light of the strong public policy of the Commonwealth, indeed the underlying constitutional mandate, the City's position is without merit.

The claim in Pivirotto arose before the PSTCA became effective, although the case was not decided by the Pennsylvania Supreme Court until almost ten years later.  The Pivirotto Court considered the PSTCA with regard to delay damages but did not discuss it when ruling on the merits.  See Pivirotto, 528 A.2d at 130.  Nonetheless, since Pivirotto, a number of negligent demolition cases have proceeded where the cause of action arose after the effective date of the PSTCA.  See, e.g., Oliver-Smith v. City of Philadelphia, 962 A.2d 728, 730-31 (Pa. Commw. Ct.

-16-

2008); <u>Frederick v. City of Pittsburgh</u>, 572 A.2d 850, 852 (Pa. Commw. Ct. 1990); <u>Kenney v. City of Philadelphia</u>, 21 Phila. Cty. Rptr. 254, 261-62 (Pa. Comm. Pl. Ct. Sept. 12, 1990).  In those cases, Pennsylvania courts permitted property owners to litigate claims for damages against municipalities where the municipalities had demolished their property without notice.[8]

In <u>Oliver-Smith</u>, for example, the Commonwealth Court held that the City of Philadelphia was liable for damages equal to "the market value of the property immediately before the injury."  <u>See</u> <u>Oliver-Smith</u>, 962 A.2d at 730.  There the City had demolished a building after telling the property owner that a previously scheduled demolition would not occur.  <u>See id.</u> at 730-31; Brief for Appellant City of Philadelphia at 5, <u>Oliver-Smith v. City of Philadelphia</u>, 962 A.2d 728 (Pa. Commw. Ct. 2008) (No. 198 C.D. 2008).  Likewise, in <u>Frederick</u>, the Commonwealth Court affirmed the trial court's award of damages to a property owner and against the City of Pittsburgh where it had razed a building without first notifying the property owner.

---

8.  The City argues that it cannot be held liable for negligent demolition because the violation notice that it sent to the North 13th Street address was not returned to it as undelivered. This argument lacks merit.  In all of these cases, as in <u>Pivirotto</u>, Pennsylvania courts held that the municipalities were liable without discussing whether notices were returned to the municipalities as undelivered.  Notice requirements are not satisfied simply because an attempt to serve notice has not been returned to the municipality as undelivered.  <u>See, e.g.</u>, <u>Jones</u>, 547 U.S. at 223.

See <u>Frederick</u>, 572 A.2d at 851-52.  The City of Pittsburgh had sent notices of condemnation to the prior owner of the property but not to the owner at the time of demolition.  Further, in <u>Kenney</u>, the Court of Common Pleas of Philadelphia County upheld a trial court's verdict in favor of the owners of a demolished property.  <u>See</u> <u>Kenney</u>, 21 Phila. Cty. Rptr. at 261-62.  Although no damages were awarded to the prevailing plaintiffs because the value of their property increased post-demolition, the court held that "the City of Philadelphia's action pursuant to the Pennsylvania Code . . . was improper since it failed to give proper notice to the building owners prior to its demolition." <u>See</u> <u>id.</u>

These cases are all consistent with the language of the Pennsylvania Supreme Court in <u>Pivirotto</u>:  "<u>To divest ownership, without personal notice, and without direct compensation, is the instance in which a constitutional government approaches most near to an unrestrained tyranny</u>." <u>Pivirotto</u>, 528 A.2d at 129 (quoting <u>Gault's Appeal</u>, 33 Pa. 94, 97-98 (1859)).  We reiterate that a common law claim for negligent demolition survives the PSTCA where § 14611 and the failure to give notice are elements of the claim.

The only issue remaining is whether, as a matter of law, Swinson's identity and whereabouts at Graterford were readily accessible to the City in June 2009.  The relevant facts

-18-

are admitted.  The parties agree that the City knew Swinson's identity as co-owner of the Mayfield Street property.  The City also concedes that "[r]ecent depositions have revealed that Plaintiff did correspond with a person from the Revenue Department regarding negotiating his tax liability."  The City has produced copies of letters from Swinson that it received in early 2009.  In those letters, Swinson requested a payment plan for back taxes owed on the Mayfield Street property and a copy of the deed.  He informed the City that he was "doing a life sentence" and was imprisoned at Graterford.

The City acknowledges that it mailed at least two letters to Swinson in 2009 at his address at Graterford.  On March 31, 2009 and again on May 27, 2009, the City's Department of Revenue communicated in writing with Swinson at Graterford concerning the Mayfield Street property.  Yet, on June 1, 2009, a mere five days after the City sent Swinson a letter at Graterford for the second time, L&I mailed a single violation notice addressed to both Swinson and his father at the home address of Swinson's father at 3643 North 13th Street in Philadelphia.  The City then razed the Mayfield Street house on June 24, 2009.

At the time of the demolition, L&I was responsible for condemning and demolishing properties that presented imminent danger of collapse.  However, L&I did not maintain its own

-19-

address and ownership database.  Rather, it simply reached out

to another City agency, the BRT, for owner contact information.

The BRT, as noted above, was the department responsible for

assessment of real estate in Philadelphia for tax purposes.

The City, however, did not make inquiry of the City's

Department of Revenue,[9] the department responsible for

"collect[ing] all real estate . . . taxes, penalties and

interest due the City."  See Philadelphia Home Rule Charter

§ 6.6-201(a).  It was unreasonable as a matter of law for L&I to

confine its search for contact information about the Mayfield

Street property to the BRT.  As Pivirotto provides, a municipal

department responsible for property taxes is likely to have

relevant information about the owners of property subject to

condemnation or demolition because owners of properties in a

state of extreme disrepair are likely delinquent with respect to

property taxes.  See Pivirotto, 528 A.2d at 129.  It is the

Department of Revenue which prepared tax bills "in accordance

with the assessments certified to the Department by the Board of

Revision of Taxes."  See Philadelphia Home Rule Charter

§ 6.6-201(a).  It is the Department of Revenue which needed to

know the identity and contact information for each property

owner in order to collect property taxes.  The BRT played no

---

9.  The Department of Revenue was previously known as the
Department of Collections.

role in this collection process.  As the U.S. Supreme Court has
said:

> [t]here is no reason to suppose that the
> State will ever be less than fully zealous
> in its efforts to secure the tax revenue
> needs.  The same cannot be said for the
> State's efforts to ensure that its citizens
> receive proper notice before the State takes
> action against them.

See Jones v. Flowers, 547 U.S. 220, 239 (2006).  Thus, the City
should have consulted the Department of Revenue in advance of
demolition for the identity and whereabouts of the property
owners and not relied solely on the BRT.

The City argues that it would be overly burdensome to
require L&I to search the Department of Revenue for contact
information.  We are not persuaded.  If it could easily consult
the BRT, it could just as easily contact the Department of
Revenue, which is more likely than the BRT to have relevant
contact information.  The additional effort is minimal.
Further, the Pennsylvania Supreme Court has previously held that
"check[ing] the records of sister government agencies before
permitting the forfeiture of real property did not constitute
'extraordinary efforts.'"  Sklar, 587 A.2d at 1388.  We note
that the Court used the plural, "government agencies."
Moreover, in Tracy, the Pennsylvania Supreme Court emphasized
that, under the circumstances of that case, the Chester County
Tax Claim Bureau should have gone so far as to check the records

-21-

of the Secretary of the Commonwealth in Harrisburg, the state capital, to obtain the identity and address of the partners in the partnership which owned the property.  See Tracy, 489 A.2d at 1339.  Consulting only one City agency, particularly one more tangential than the Department of Revenue, is not sufficient.

If the City had reached out to the Department of Revenue, it would have quickly learned that Swinson had recently been in communication with the City concerning taxes owed on the Mayfield Street property and that his current address was at Graterford where he was incarcerated.  It is irrelevant that Swinson never specifically requested that the Department of Revenue update his contact information to the Graterford address.  The plaintiff's obligation to update his or her address does not "relieve[ ] the [government] of its constitutional obligation to provide adequate notice."  See Jones, 547 U.S. at 232.  Further, although the City argues in the abstract that prisoners may from time to time be relocated to different prisons, the City knew Swinson was confined at Graterford when it sent the demolition notice less than a week after writing to him about that very same property.  It also knew that he was "doing a life sentence" in the Pennsylvania prison system.  When the City instead mailed a violation notice to Swinson and his father at the North 13th street address, the

City violated Swinson's right to notice despite its ready access
to his whereabouts.

We also reject the City's argument that it was
reasonable under the circumstances to send notice only to the
North 13th street address, which happened to be the home address
of Swinson's father, because "by making the father aware, the
son would also be aware."[10]  Significantly, 3643 North 13th
Street, the address handwritten on the deed for the Mayfield
Street property, was simply identified as "[t]he address of the
above Grantee."  Here, the deed unambiguously identified two
grantees, Swinson and his father.  The City should have noticed
this discrepancy.  It was unreasonable under the circumstances
for the City to rely on this address for Swinson without further
effort.  Each co-owner is entitled to notice when the address of
each is "reasonably ascertainable."  See Pivirotto, 528 A.2d at
129.  In Geier, the Pennsylvania Supreme Court held that where
"the record shows that the Bureau had the names of both owners
in its records, but sent only one notice; we conclude that the
Bureau did not make a reasonable effort to notify all of the

---

10.  The City makes this argument with the benefit of hindsight.
On June 1, 2009, when L&I sent the violation notice to the North
13th Street address, the City did not know who resided at that
address.

owners."[11]  See Geier, 588 A.2d at 483 (citing Tracy, 489 A.2d at
1338-39).  A single letter addressed to two owners is less
likely to be received by each owner than two separate letters
addressed to each owner individually.

Finally, the City had ready access to Swinson's
address regardless of whether the Department of Revenue updated
the official address "on file" for Swinson.  Communications
received and sent by the Department of Revenue are logged in its
computer system.  Had L&I connected with that system, it would
have easily learned that the City had recently sent and received
letters from Swinson, the incarcerated property owner, just a
few days earlier.  The notes in the computer system read: "REC'D
CORRES FROM T/P WHO IS INCARCERATED" and "REFER TO NOTE 3/31/09
T/P IS MAKING THE SAME REQUEST FOR AN AGREEMENT WHILE
INCARCERATED."  Swinson's letters were readily accessible
without extraordinary efforts in the Department of Revenue's
file on the Mayfield Street property.  Again, the burden on the
City to spend a few minutes searching its own files for
Swinson's address would have been slight, particularly when it
was making plans to demolish his house.  The notice involved
here did not concern some trivial matter.

---

11. In Geier, although there were two property owners of record,
the Tax Claim Bureau sent only one notice addressed to one
property owner.  It made no attempt to notify the other property
owner.  See Geier, 588 A.2d at 481-82.

All relevant material facts are undisputed.  Swinson has established that his identity and whereabouts at Graterford were not only readily accessible to but actually known by the City.  Thus, the City was obligated to send a demolition notice to Swinson at his Graterford address.  The City's failure to do so was unreasonable as a matter of law, and the City is liable for damages for negligently demolishing Swinson's property at 236 East Mayfield Street in Philadelphia.

Accordingly, we will grant the motion of plaintiff Lindell Swinson, Jr., for summary judgment on the issue of liability and deny the motion of the defendant City of Philadelphia for summary judgment.